UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**SEALED**

UNITED STATES OF AMERICA

v.

ANDI JUNIOR JACQUES
MONIKA SHAUNTEL JENKINS
████████  ████████
LOUIS NOEL MICHEL
JEFF JORDAN PROPHT-FRANCISQUE
DICKENSON ELAN
MICHAEL JEAN POIX
VLADIMYR CHERELUS
████████  ████████

CASE NO. 6:22-cr- 148-PGB-LHP
18 U.S.C. § 1962(d)
18 U.S.C. § 1349
18 U.S.C. § 1028A(a)(1)

CLERK, US DISTRICT COURT
MIDDLE DISTRICT FL #013A
ORLANDO, FL
2022 SEP -7  PM 4:38
FILED

## INDICTMENT

The Grand Jury charges:

## COUNT ONE
**(RICO Conspiracy)**

At times material to this Indictment:

### A.   Introduction

#### i. Professional Tax Preparation

1.      The Internal Revenue Service (IRS) was an agency of the United States
Department of the Treasury responsible for administering the internal revenue laws of
the United States.  The IRS accepted the filing of electronic federal tax returns through
computer servers in West Virginia and Tennessee.

2.      An "EFIN" was an Electronic Filing Identification Number that the IRS
would assign only to approved tax professionals and firms.  As background, the IRS

only permitted certain tax professionals or firms to file bulk (i.e. 11 or more) federal tax returns. A tax professional or firm seeking such authorization from the IRS was required to obtain an IRS e-Services Account, apply to become an Electronic Return Originator, and pass an IRS suitability check. If the applicant was not certified or licensed—as an attorney or certified public accountant (CPA), for example—the applicant was required to provide fingerprints to the IRS. Upon approval, the IRS would issue the tax professional or firm an EFIN, which would identify the firm as the filer of any electronically filed tax returns.

3.    A "PTIN" was a Preparer Tax Identification Number that the IRS required for anyone who prepared or assisted in preparing federal tax returns for compensation. Any individual who applied for a PTIN was required to provide personally identifiable information (PII), including his or her name, social security number, and date of birth.

4.    An "Internet Protocol" or "IP" address was a unique numeric address used by computers on the internet. Every computer connected to the internet was required to have an assigned IP address so that internet traffic sent from, and directed to, that computer could be properly directed from its source to its destination.

5.    Drake Software ("Drake") was a company located in North Carolina that provided professional tax software to tax preparers. The IRS authorized Drake to transmit electronically filed tax returns to the IRS. Any tax returns submitted using Drake Software were transmitted by Drake through its IP addresses in North Carolina.

2

6.     "TaxSlayer" was a company located in Georgia that provided professional tax software to tax preparers.  The IRS authorized TaxSlayer to transmit electronically filed tax returns to the IRS.  Any tax returns submitted using TaxSlayer software were transmitted through TaxSlayer's IP addresses in Georgia.

7.     The vast majority of tax returns referenced in this Indictment that were filed through an EFIN, were filed using either Drake or TaxSlayer.

8.     A "refund transfer" was a bank deposit product that allowed a taxpayer to deduct a tax preparation fee from any resulting refund.  Banks that offered this refund transfer product would set up a temporary bank account in the taxpayer's name.  In return for this convenience, the taxpayer would pay the bank a modest handling fee.

9.     Professional tax preparers often facilitated the use of refund transfers.  When a taxpayer agreed to pay for tax preparation services with his or her refund, the tax preparer would transmit the return to the IRS with the taxpayer's temporary bank account information on the return.  When the IRS issued the tax refund, funds would be deposited into that temporary account.  All authorized fees (including the tax preparation fees) were automatically deducted from the tax refund and disbursed to the various entities that charged fees, including the tax preparer.  The remaining balance was disbursed to the taxpayer through his or her chosen method, such as direct deposit to a bank account.

10.    Banks that offered refund transfer product services also offered other services to tax preparers, including the ability to distribute prepaid debit cards or print

3

checks in the preparer's office.  Consequently, if a taxpayer did not already have a traditional bank account or debit card to receive the final tax refund deposit, the tax preparer could provide a debit card or print a check with the remaining refund balance.

11.    A "Device ID" was an identifier that was akin to a digital fingerprint.  It was created by combining certain attributes of a device to assist in identifying a unique device.

### ii. Illicit Sale of PII on the Marketplace

12.    The "Marketplace" was a website that illegally sold credentials (i.e. usernames and passwords) of compromised computer servers.  The Marketplace also illegally sold PII—including social security numbers—of U.S. citizens.

13.    Remote Desktop Protocol ("RDP") was a proprietary protocol that Microsoft developed.  RDP provided a user with a graphical interface for connection to another computer over a network.  The user would employ RDP client software for this purpose, while the other computer would run RDP server software.

14.    When using an RDP client from, for example, computer A to access the RDP server of computer B, the screen on computer A would display what was displayed on computer B's screen.  Thus, it would be as if the user of computer A was actually physically present at computer B, using it.

15.    Purchasers of server credentials on the Marketplace could use those credentials to gain unauthorized access to the relevant server via RDP.

4

### iii. **Select Relevant Corporate Entities**

16.   Edvert Tax Prep ("Edvert") was a business based in West Palm Beach, Florida.

17.   FSL Multiservices LLC ("FSL") was a Florida limited liability company based in Lake Worth, Florida.

18.   Yvelene Tax Solutions LLC ("YTS") was a Florida limited liability company based in West Palm Beach, Florida.

19.   Morton Fast Refund ("MFR") was a business based in Delray Beach, Florida.

20.   SC Accounting and Tax Services ("SCA") was a business based in Boynton Beach, Florida.

21.   Chantol Multiservices ("CMS") was a business based in Lake Worth, Florida.

22.   Edvert, FSL, YTS, MFR, SCA, and CMS all purported to perform tax preparation services, but in reality, they filed false tax returns in the names of identity theft victims.

23.   Business-1 was a tax preparation firm in Texas.

24.   Business-2 was a Certified Public Accountant (CPA) firm in Arizona.

25.   Business-3 was a CPA firm in Georgia.

26.   Business-4 was a tax preparation firm in Texas.

27.   Business-5 was a CPA firm in New Jersey.

28.   Business-6 was a CPA firm in Texas.

29.     Business-7 was a CPA firm in North Carolina.

30.     Business-8 was a tax preparation firm in Texas.

31.     Business-9 was a tax preparation firm in Ohio.

32.     Business-10 was a CPA firm in Texas.

33.     Business-11 was a CPA firm in Orlando, Florida, in the Middle District of Florida.

34.     Business-12 was a tax preparation firm in Sarasota, Florida, in the Middle District of Florida.

35.     Business-13 was a CPA firm in Winter Haven, Florida, in the Middle District of Florida.

36.     Business-14 was a tax preparation firm in Jacksonville, Florida, in the Middle District of Florida.

### iv.  Named Co-Conspirators

37.     ANDI JUNIOR JACQUES ("JACQUES") was a resident of Florida. JACQUES and others known and unknown to the Grand Jury established and operated various businesses, including Edvert, FSL, YTS, MFR, SCA, and CMS.

38.     DICKENSON ELAN ("ELAN") was a resident of Florida.  ELAN assisted JACQUES and others known and unknown to the Grand Jury in establishing and operating various businesses, including Edvert and FSL.

39.     ████  ██████████████████  was a resident of Florida. ████████████ used the Marketplace to purchase credentials of compromised computer servers to steal PII that conspirators later used to file false tax returns through

6

various entities. The Marketplace account that ▮▮▮▮▮▮▮ used was named "Shitgattostop."

40.  MONIKA SHAUNTEL JENKINS ("JENKINS") was a resident of Florida. ▮▮▮▮▮▮▮ often sent JENKINS server credentials of compromised computer servers that he had purchased on the Marketplace. JENKINS and others filed false tax returns using PII of identity theft victims, including PII that ▮▮▮ ▮▮▮▮ and JENKINS obtained through computer intrusions, and PII that CO-CONSPIRATOR #1 sent to JENKINS. JENKINS also filed self-prepared returns in furtherance of the charged conspiracy. JENKINS also opened multiple bank accounts that members of the Enterprise—including JENKINS, ▮▮▮▮▮▮▮, CHERELUS, and RICH4EVER4430—used to collect fraudulently obtained tax refunds.

41. JEFF JORDAN PROPHT-FRANCISQUE ("PROPHT") was a resident of Florida. PROPHT used the Marketplace to purchase credentials of compromised computer servers to steal PII that conspirators later used to file false tax returns through various entities. PROPHT also purchased on the Marketplace credentials of compromised computer servers for the purpose of using those servers to access and modify financial accounts in furtherance of the charged conspiracy. PROPHT had multiple Marketplace accounts, including accounts named "Moneybaby954" and "Moneybaby."

42. MICHAEL JEAN POIX ("POIX") was a resident of Florida. POIX assisted JACQUES, ELAN, and others known and unknown to the Grand Jury in establishing and operating various businesses, including FSL and CMS.

7

43.     LOUIS NOEL MICHEL ("MICHEL") was a resident of Florida. MICHEL used the Marketplace to purchase credentials of a compromised computer server to steal PII that conspirators later used to file false tax returns. MICHEL also purchased on the Marketplace credentials of compromised computer servers for the purpose of using those servers to access and modify financial accounts in furtherance of the charged conspiracy. MICHEL had multiple Marketplace accounts, including accounts named "Mill_life1804" and "Mill_life18044." In addition, MICHEL assisted JACQUES, ELAN, and others known and unknown to the Grand Jury in operating businesses, including FSL. MICHEL also filed self-prepared returns in furtherance of the charged conspiracy.

44.     VLADIMYR CHERELUS ("CHERELUS") was a resident of Florida. CHERELUS used the Marketplace to purchase credentials of compromised computer servers to steal PII for conspirators to use in filing false tax returns. CHERELUS's Marketplace account was named "kids754million." CHERELUS assisted JACQUES, ELAN, and others known and unknown to the Grand Jury in operating businesses, including FSL. CHERELUS also filed self-prepared returns in furtherance of the charged conspiracy.

45.     ███████████ ' ████████ ; ████████████ was a resident of Florida. ████████ assisted JACQUES, ELAN, and others known and unknown to the Grand Jury in operating businesses, including Edvert, FSL, MFR, and SCA.

### v. Unnamed Co-Conspirators

46.     CO-CONSPIRATOR #1 (hereafter, "RICH4EVER4430") was a resident of Florida.   RICH4EVER4430's Marketplace account was named "Rich4ever4430." RICH4EVER4430 used the Marketplace to purchase credentials of compromised computer servers to steal PII that conspirators used to file false tax returns.   RICH4EVER4430 also filed self-prepared returns in furtherance of the charged conspiracy.   RICH4EVER4430 also purchased on the Marketplace credentials of compromised computer servers for the purpose of using those servers to access and modify financial accounts in furtherance of the charged conspiracy.

47.     CO-CONSPIRATOR #2 was a resident of Florida.   CO-CONSPIRATOR #2 recruited an individual to open a bank account to collect preparer fees that YTS purportedly earned.

### vi. The Enterprise

48.     At various times relevant to this Indictment, the defendants,

ANDI JUNIOR JACQUES,
MONIKA SHAUNTEL JENKINS,
██████ ████████
LOUIS NOEL MICHEL,
JEFF JORDAN PROPHT-FRANCISQUE,
DICKENSON ELAN,
MICHAEL JEAN POIX,
VLADIMYR CHERELUS, and
██████ ████████

their unnamed co-conspirators, and others known and unknown to the Grand Jury, were members and associates of a criminal organization whose members and

9

associates engaged in acts involving computer intrusions, wire fraud, mail fraud, access device fraud, aggravated identity theft, and other crimes.

49.     The criminal organization, including its leadership, membership, and associates, constituted an "enterprise" as defined by 18 U.S.C. § 1961(4) (hereafter, the "Enterprise"), that is, a group of individuals associated in fact, although not a legal entity, that was engaged in and the activities of which affected interstate and foreign commerce.

50.     The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

### B.     Purposes of the Enterprise

51.     The principal purposes of the Enterprise were to:

  a.     steal PII from identity theft victims;

  b.     purchase credentials for compromised computer servers;

  c.     access compromised computer servers of CPA and tax preparation firms to steal PII in bulk;

  d.     access and use compromised computer servers to conduct and conceal the Enterprise's illicit activities;

  e.     file false tax returns in the names of identity theft victims;

  f.     obtain millions of dollars in fraudulently obtained tax refunds;

  g.     financially enrich the members of the Enterprise; and

10

h.     misrepresent, conceal, and hide acts done in furtherance of the Enterprise and the purpose of those acts.

### C.     Manner and Means of the Enterprise

52.     Among the manner and means by which the members of the Enterprise and their associates agreed to conduct and participate in the conduct of the affairs of the Enterprise were the following:

a.     Members of the Enterprise and their associates would and did illicitly obtain and conspire to illicitly obtain computer server credentials, through the Marketplace and through other means unknown to the Grand Jury;

b.     Members of the Enterprise and their associates would and did use illicitly obtained server credentials to commit computer intrusions into legitimate tax preparation and CPA firms;

c.     Members of the Enterprise and their associates would and did commit computer intrusions into legitimate tax preparation and CPA firms to steal PII and copies of past tax returns that those firms previously filed;

d.     Members of the Enterprise and their associates would and did establish and operate businesses that purported to be legitimate tax preparation firms;

e.     Members of the Enterprise and their associates would and did obtain EFINs in the identities of identity theft victims and associates of the Enterprise;

f.     Members of the Enterprise and their associates would and did use stolen PII to obtain PTINs in the identities of identity theft victims;

11

g. Members of the Enterprise and their associates would and did use PTINs in the identities of identity theft victims to conceal the co-conspirators' identities;

h. Members of the Enterprise and their associates would and did use interstate wire and electronic communications to promote and conduct the affairs of the Enterprise;

i. Members of the Enterprise and their associates would and did use firms that they established to file tax returns for former customers whose identities the conspirators stole and used without the customers' authorization;

j. Members of the Enterprise and their associates would and did use Enterprise-established firms to file tax returns that contained false data, and thereby fraudulently obtain tax refunds;

k. Members of the Enterprise and their associates would and did use Enterprise-established firms to file false tax returns using stolen PII, and thereby fraudulently obtain tax refunds;

l. Members of the Enterprise and their associates would and did use—or "hijack"—the EFINs of legitimate tax preparation and CPA firms to file false tax returns, and thereby fraudulently obtain tax refunds;

m. Members of the Enterprise and their associates would and did open bank accounts to collect preparer fees generated by the filing of false tax returns, making it appear as though the Enterprise-established firms were legitimate;

12

n.    Members of the Enterprise and their associates would and did direct fraudulently obtained tax refunds to debit cards that they controlled;

o.    Members of the Enterprise and their associates would and did withdraw, and aid and abet the withdrawal of, the fraudulently obtained tax refunds from those debit cards; and

p.    Members of the Enterprise and their associates would and did use refund transfers to print tax refund checks and to route deposits of fraudulently obtained tax refunds to bank accounts that the Enterprise controlled.

### D.    <u>Racketeering Conspiracy</u>

53.    From an unknown date no later than on or about December 21, 2015, and continuing through and including an unknown date no earlier than on or about March 19, 2019, in the Middle District of Florida and elsewhere, the defendants,

ANDI JUNIOR JACQUES,
MONIKA SHAUNTEL JENKINS,
████████ ████████
LOUIS NOEL MICHEL,
JEFF JORDAN PROPHT-FRANCISQUE,
DICKENSON ELAN,
MICHAEL JEAN POIX,
VLADIMYR CHERELUS, and
████████ ████████

together with their unnamed co-conspirators, and others known and unknown to the Grand Jury, being persons employed by and associated with the Enterprise described in paragraphs 48 through 52 of this Indictment, which Enterprise engaged in, and the activities of which affected, interstate and foreign commerce, knowingly, willfully, and unlawfully conspired with persons, both known and unknown to the Grand Jury, to

13

violate 18 U.S.C. § 1962(c); that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity.

### E.  Pattern of Racketeering Activity

54.    The pattern of racketeering activity, as defined in 18 U.S.C. §§ 1961(1) and (5), through which the defendants and their co-conspirators agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise, consisted of multiple acts indictable under the following provisions of federal law:

      a.  18 U.S.C. § 1029 (relating to access device fraud);

      b.  18 U.S.C. § 1341 (relating to mail fraud); and

      c.  18 U.S.C. § 1343 (relating to wire fraud).

55.    It was further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

### F.  Overt Acts

56.    In furtherance of the conspiracy and to accomplish the object of the conspiracy, the defendants and other Enterprise members committed, within the Middle District of Florida and elsewhere, the following Overt Acts, among others:

### i.  Edvert (2016)

57.    Between on or about January 19, 2016, and on or about April 29, 2016, members of the Enterprise—including JACQUES, ELAN, JENKINS, PROPHT,       , and RICH4EVER4430—filed, caused to be filed, and aided and abetted

14

the filing of approximately 1,046 tax returns through Edvert, claiming more than $5.1 million in tax refunds.

58.     Members of the Enterprise—including JACQUES, ELAN, JENKINS, PROPHT, and RICH4EVER4430—primarily used, and aided and abetted the use of, PII stolen in bulk from tax preparation and CPA firms to file false tax returns through Edvert.

59.     In or about March 2015 and in or about December 2015, members of the Enterprise—including JACQUES and ELAN—obtained multiple EFINs for Edvert.

60.     On or about December 1, 2015, JACQUES and ELAN executed a lease for commercial office space in West Palm Beach, Florida, for Edvert.

61.     In or about December 2015, JACQUES secured phone and internet service for Edvert's office space.

62.     On or about December 18, 2015, ELAN aided and abetted the creation of email address edverttaxprep@yahoo.com, which the Enterprise used to facilitate tax fraud through Edvert.

63.     On or about December 21, 2015, PROPHT sent RICH4EVER4430 the EFIN and PTIN information for Business-1's owner.  Thereafter, beginning on or about February 13, 2016, members of the Enterprise used PII stolen from Business-1 to file false tax returns through Edvert.

64.     On or about December 27, 2015, ▇▇▇▇▇ paid the IRS to obtain a PTIN in the name of Person-1.  Members of the Enterprise later used Edvert's EFIN and the PTIN in Person-1's name to file false tax returns.

15

65.     On or about December 28, 2015, JACQUES applied to obtain Drake software and refund transfer products for Edvert's EFINs.  On or about January 19, 2016, ELAN sent JACQUES an Edvert EFIN and the Drake password for that EFIN. On or about that same day, that Edvert EFIN began to file tax returns using stolen PII.

66.     In or about 2015, and continuing through in or about 2016, ELAN recruited individuals to file tax returns on behalf of Enterprise-controlled entities, including Edvert.

67.     Between on or about January 29, 2015, and on or about February 13, 2016, JACQUES or a person unknown to the Grand Jury who was affiliated with JACQUES, shared with RICH4EVER4430 the PII of Person-2.  On or about February 13, 2016, RICH4EVER4430 obtained a PTIN in Person-2's name.   Thereafter, members of the Enterprise used Edvert's EFIN and the PTIN in Person-2's name to file false tax returns through Edvert.

68.     On or about January 30, 2016, RICH4EVER4430 sent JENKINS an email with a series of names, social security numbers, and dates of birth of various individuals, including clients of a CPA firm in Connecticut.  Thereafter, members of the Enterprise used some of that PII to file false tax returns through Edvert.

69.     On or about February 6, 2016, RICH4EVER4430 sent PROPHT an email with a series of names, social security numbers, dates of birth, addresses, and other personal information of various individuals, including a client of Business-1.  On or about February 13, 2016, a member of the Enterprise used that PII to file a false return in the client's name through Edvert.

16

70.    On or about February 15, 2016, RICH4EVER4430 purchased from the Marketplace credentials for the compromised computer server of a CPA firm in Minnesota. Thereafter, members of the Enterprise used PII stolen from that computer server to file false tax returns through Edvert.

71.    On or about September 27, 2015, ▆▆▆▆▆ registered Secure Titles and Closing as a fictitious name with the Florida Department of State Division of Corporations. On or about September 30, 2015, and on or about December 22, 2015, ▆▆▆▆▆ opened multiple bank accounts in the name of Secure Titles and Closing. Thereafter, from in or about February 2016 until in or about June 2016, ▆▆▆▆▆ received in these accounts significant sums of tax preparer fees that Edvert had purportedly earned.

### ii. Hijacked EFINs of Businesses-1 and -2 (2016)

72.    Beginning on or about January 28, 2016, and continuing through on or about February 25, 2016, members of the Enterprise—including PROPHT, JENKINS, and RICH4EVER4430—filed and caused to be filed approximately 175 tax returns through the hijacked EFIN of Business-1, claiming more than $1.1 million in tax refunds.

73.    Beginning on or about February 26, 2016, and continuing through on or about August 1, 2016, members of the Enterprise—including JENKINS—filed and caused to be filed approximately 296 tax returns through the hijacked EFIN of Business-2, claiming more than $2 million in tax refunds.

17

74.     Members of the Enterprise—including PROPHT, JENKINS, and RICH4EVER4430—primarily used PII stolen in bulk from tax preparation and CPA firms to file false tax returns through the hijacked EFINs of Businesses-1 and -2.

75.     On or about January 30, 2016, RICH4EVER4430 sent JENKINS an email message with the PII of certain individuals who were clients of a CPA firm in Connecticut.  Shortly thereafter, members of the Enterprise used that PII to file false returns through the hijacked EFIN of Business-1.

76.     On or about February 9, 2016, JENKINS sent a co-conspirator an email message with the PII of certain individuals who were clients of a CPA firm in Minnesota.  On or about February 21, 2016, and on or about March 12, 2016, JENKINS sent a co-conspirator an email message with the PII of certain individuals who were clients of a CPA firm in New Jersey.  Shortly after JENKINS sent each email, members of the Enterprise used PII from the emails to file false tax returns through the hijacked EFIN of Business-1.

77.     On or about February 24, 2016, JENKINS sent a co-conspirator an email message, attaching a photograph of a laptop that was actively using RDP to intrude on the computer server of Business-2.

78.     On or about March 4, 2016, JENKINS sent a co-conspirator a series of PII stolen from Business-2, with a note that stated, "DO THOSE SEND MORE AT 2am."  Shortly thereafter, members of the Enterprise used that PII to file false returns through the hijacked EFIN of Business-2.

18

79.     In filing returns and claiming tax refunds through the hijacked EFINs of Businesses-1 and -2, members of the Enterprise directed the IRS to deposit certain tax refunds into bank accounts that JENKINS opened and controlled.

### iii.  Hijacked EFINs of Businesses-3 and -4 (2017)

80.     Beginning on or about January 20, 2017, and continuing through on or about July 24, 2017, members of the Enterprise—including JENKINS and ███████—filed, caused to be filed, and aided and abetted the filing of, approximately 219 tax returns through the hijacked EFIN of Business-3, claiming more than $1 million in tax refunds.

81.     Beginning on or about January 23, 2017, and continuing through on or about February 23, 2017, members of the Enterprise—including JENKINS and ████████████—filed, caused to be filed, and aided and abetted the filing of, approximately 158 tax returns through the hijacked EFIN of Business-4, claiming approximately $1 million in tax refunds.

82.     Members of the Enterprise—including JENKINS and █████████—primarily used PII stolen in bulk from tax preparation and CPA firms to file, cause to be filed, and aid and abet the filing of, false tax returns through the hijacked EFINs of Businesses-3 and -4.

83.     Between on or about January 24, 2017, and on or about February 22, 2017, ████████ purchased from the Marketplace credentials for the compromised computer servers of Business-10 and various CPA and tax preparation firms in Alabama, Georgia, Massachusetts, and Oregon.   Thereafter, members of the

19

Enterprise used PII stolen from those computer servers to file false tax returns through the hijacked EFIN of Business-3.

84.     On or about December 30, 2016, ▆▆▆▆▆▆ sent JENKINS the credentials for the compromised computer server of Business-4. Shortly thereafter, members of the Enterprise used PII stolen from Business-4 to file false tax returns through the hijacked EFIN of Business-4.

85.     On or about February 23, 2017, JENKINS created a draft email that said "Million dollar dreams and federal nightmares" and listed the names of several individuals, including numerous Business-3 clients whose PII members of the Enterprise had used to file false returns through the hijacked EFIN of Business-3.

86.     On or about March 31, 2017, JENKINS sent ▆▆▆▆▆▆ an email that contained a photograph of handwritten notes. The notes included the name, social security number, date of birth, EFIN, and PTIN of one of the principals of Business-3. Members of the Enterprise used the EFIN and PTIN of that Business-3 principal on all of the false returns that were filed through the hijacked EFIN of Business-3.

87.     In filing returns and claiming tax refunds through the hijacked EFINs of Businesses-3 and -4, members of the Enterprise directed the IRS to deposit certain tax refunds into bank accounts that JENKINS opened and controlled.

### iv. Hijacked EFIN of Business-5 (2017)

88.     On or about January 20, 2017, PROPHT purchased from the Marketplace credentials for the compromised computer server of Business-5.

89.     Beginning on or about January 23, 2017, and continuing through on or about March 15, 2017, members of the Enterprise—including PROPHT, CHERELUS, and RICH4EVER4430—filed, caused to be filed, and aided and abetted the filing of, approximately 330 tax returns through the hijacked EFIN of Business-5, claiming more than $1.4 million in tax refunds.

90.     Members of the Enterprise—including PROPHT, CHERELUS, and RICH4EVER4430—primarily used PII stolen in bulk from tax preparation and CPA firms to file, and aid and abet the filing of, false tax returns through the hijacked EFIN of Business-5.

91.     Members of the Enterprise—including PROPHT, CHERELUS, and RICH4EVER4430—used, and aided and abetted the use of, PII stolen from Business-5 and PII stolen from the following computer servers to file false tax returns through the hijacked EFIN of Business-5:

        a.      Compromised computer server of a CPA firm in Nevada, whose credentials PROPHT purchased from the Marketplace on or about February 17, 2017;

        b.      Compromised computer servers of CPA and tax preparation firms in Michigan, Iowa, and North Carolina, whose credentials RICH4EVER4430 purchased from the Marketplace on or about January 26, 2017, and on or about February 19, 2017; and

        c.      Compromised computer servers of CPA firms in Pennsylvania, whose credentials CHERELUS purchased from the Marketplace on or about February 21, 2017, and on or about February 24, 2017.

21

92.     Between on or about January 23, 2017, and on or about March 4, 2017, members of the Enterprise—including PROPHT—used, and aided and abetted the use of, PII stolen from two CPA firms to file false returns in the names of various individuals, including B.R., S.B., A.S., G.M., J.S., A.S., D.A., and W.E., through the hijacked EFIN of Business-5.  Between on or about January 8, 2017, and on or about March 4, 2017, PROPHT purchased from the Marketplace credentials of at least eight compromised computer servers, which members of the Enterprise used to access and modify financial accounts in those individuals' names, in furtherance of the Enterprise's tax fraud.

93.     On or about January 24, 2017, members of the Enterprise—including PROPHT—filed, caused to be filed, and aided and abetted the filing of, a false tax return in the name of M.D.V. through the hijacked EFIN of Business-5.  As a result of that false tax return, the IRS deposited a tax refund in the amount of $6,983 onto a debit card assigned to M.D.V.  Thereafter, a member of the Enterprise withdrew or otherwise used funds from that debit card, including in the following transactions:

        a.      a $1,903 purchase, a $300 withdrawal, and a $56.62 purchase in Orlando, Florida, in the Middle District of Florida, on or about March 14, 2017; and

        b.      a $28.10 purchase in St. Cloud, Florida, in the Middle District of Florida, on or about March 16, 2017.

94.     On or about January 27, 2017, RICH4EVER4430 purchased from the Marketplace the credentials of a compromised computer server.  On or about February 26, 2017, a member of the Enterprise used PII stolen from a CPA firm to file a false

22

return in the name of T.L. through the hijacked EFIN of Business-5.  On or about February 27, 2017, a member of the Enterprise used that server to access and modify a financial account in T.L.'s name, in furtherance of the Enterprise's tax fraud.

### v. FSL, YTS, MFR, and SCA (2017)

95.    Beginning on or about January 23, 2017, and continuing through on or about March 8, 2017, members of the Enterprise—including JACQUES, ELAN, POIX, ▬▬▬ and RICH4EVER4430—filed, caused to be filed, and aided and abetted the filing of, approximately 661 tax returns through FSL, claiming more than $3 million in tax refunds.

96.    Beginning on or about January 26, 2017, and continuing through on or about March 7, 2017, members of the Enterprise—including JACQUES and RICH4EVER4430—filed, caused to be filed, and aided and abetted the filing of, approximately 455 tax returns through YTS, claiming more than $2.4 million in tax refunds.

97.    Beginning on or about January 26, 2017, and continuing through on or about March 8, 2017, members of the Enterprise—including JACQUES, ▬▬▬ and RICH4EVER4430—filed, caused to be filed, and aided and abetted the filing of, approximately 828 tax returns through MFR, claiming more than $4.5 million in tax refunds.

98.    Beginning on or about March 22, 2017, and continuing through on or about April 9, 2017, members of the Enterprise—including JACQUES, PROPHT, ▬▬▬ and RICH4EVER4430—filed, caused to be filed, and aided and abetted

the filing of, approximately 303 tax returns through SCA, claiming more than $1.5 million in tax refunds.

99.   Members of the Enterprise—including JACQUES, ELAN, POIX, ▓▓▓▓▓ PROPHT, and RICH4EVER4430—primarily used, and aided and abetted the use of, PII stolen in bulk from tax preparation and CPA firms to file false tax returns through FSL, YTS, MFR, and SCA.

100.   In or about October 2016 and in or about January 2017, members of the Enterprise—including JACQUES and ELAN—obtained multiple EFINs for FSL.

101.   In or about October 2016 and in or about January 2017, members of the Enterprise—including JACQUES—obtained multiple EFINs for YTS.

102.   In or about December 2016 and in or about January 2017, members of the Enterprise—including JACQUES—obtained multiple EFINs for MFR.

103.   In or about March 2017, members of the Enterprise—including JACQUES—obtained multiple EFINs for SCA.

104.   On or about December 15, 2016, ELAN created email address fslmultiservices@gmail.com, which members of the Enterprise—including JACQUES and POIX—used to facilitate tax fraud through FSL, YTS, MFR, SCA, and CMS. Non-exhaustive examples of such use include the following:

a.   On or about February 3, 2017, members of the Enterprise used fslmultiservices@gmail.com to record the name of J.B. and a PTIN that members of the Enterprise had registered in her name. RICH4EVER4430 had obtained J.B.'s PII through a computer server breach of Business-11. Beginning on or about February 4,

24

2017, through March 7, 2017, members of the Enterprise used PII stolen from various tax preparation and CPA firms to file false returns through FSL, using the PTIN in J.B.'s name.  In addition, on or about February 28, 2017, members of the Enterprise filed a false tax return in J.B.'s name through MFR.

b.  On or about February 11, 2017, fslmultiservices@gmail.com created a draft email that contained the social security number and date of birth, a card number, and an address for A.S.  On or about February 11, 2017, members of the Enterprise used A.S.'s PII to file a false tax return through YTS.  RICH4EVER4430 had obtained A.S.'s PII through a computer server breach of Business-12, a tax preparation firm in Sarasota, Florida, in the Middle District of Florida, on or about January 23, 2017.

c.  On or about February 13, 2017, fslmultiservices@gmail.com created a draft email that contained the social security number and date of birth, a card number, and an address for L.S., an identity theft victim whose PII members of the Enterprise obtained from a tax preparation firm in Florida.  Two weeks earlier, on or about January 29, 2017, members of the Enterprise had used L.S.'s PII to file a false tax return through YTS.

d.  On February 17, 2017, members of the Enterprise used fslmultiservices@gmail.com to create a draft email titled "CLIENTS THATS HAVING PROBLEMS WITH REFUND."  The email listed nine individuals. Between on or about January 27, 2017, and on or about January 31, 2017, members

25

of the Enterprise filed false returns in the names of eight of those individuals, through MFR.

   e. On or about March 31, 2017, members of the Enterprise used fslmultiservices@gmail.com to send an email to brabra@inbox.com, the account owner of which is known to the Grand Jury. The email attached a tax refund check addressed to B.M.G. In addition, on or about April 6, 2017, members of the Enterprise used fslmultiservices@gmail.com to create a draft email that listed the PII of B.M.G., T.J., B.S., and T.H. RICH4EVER4430 had obtained the PII of B.M.G., T.J., B.S., and T.H. through his March 4, 2017 breach of a CPA firm in Tennessee. Between on or about March 23, 2017, and on or about March 29, 2017, members of the Enterprise filed false tax returns in the names of B.M.G., T.J., B.S., and T.H., through SCA.

   f. On or about January 9, 2018, members of the Enterprise—including POIX—used, and aided and abetted the use of, fslmultiservices@gmail.com to receive communications concerning fingerprint cards that members of the Enterprise had purchased to facilitate tax fraud through CMS.

  105. On or about December 20, 2016, ELAN and JACQUES used fslmultiservices@gmail.com to correspond with a provider of prepaid debit cards to obtain debit cards onto which tax refunds could be deposited. ELAN and JACQUES used FSL's account with this debit card provider to obtain cards for FSL, YTS, and MFR.

106.   On or about September 15, 2016, JACQUES created email address clarks945@yahoo.com, which members of the Enterprise used to facilitate tax fraud through SCA.

107.   On or about January 14, 2017, JACQUES created email address yvelenetax@yahoo.com, which members of the Enterprise used to facilitate tax fraud through YTS.

108.   On or about January 18, 2017, JACQUES applied to obtain Drake software and refund transfer products for the EFINs of FSL, YTS, and MFR.

109.   On or about March 14, 2017, a member of the Enterprise applied to obtain Drake software and refund transfer products for the EFINs of SCA.

110.   Beginning in or about April 2016, and continuing through in or about April 2017, JACQUES rented a property in Delray Beach, Florida.   In or about January 2017 and February 2017, members of the Enterprise received check stock and debit cards on behalf of MFR at that property.

111.   Beginning in or about June 2016, and continuing through in or about April 2017, JACQUES rented another property in Delray Beach, Florida.  In or about January 2017 and February 2017, members of the Enterprise received check stock and debit cards on behalf of YTS at that property.

112.   On or about January 5, 2017, and on or about January 11, 2017, RICH4EVER4430 purchased from the Marketplace credentials for the compromised computer servers of a CPA firm in California and Business-11.  Thereafter, members

of the Enterprise used PII stolen from those computer servers to file false tax returns through MFR.

113. On or about January 6, 2017, RICH4EVER4430 purchased from the Marketplace credentials for the compromised computer server of a tax preparation firm in Pennsylvania. Thereafter, members of the Enterprise used PII stolen from that computer server to file false tax returns through FSL, SCA, and the hijacked EFINs of Business-7 and Business-9.

114. On or about January 11, 2017, and on or about February 22, 2017, RICH4EVER4430 purchased from the Marketplace credentials for the compromised computer servers of tax preparation and CPA firms in California and Pennsylvania. Thereafter, members of the Enterprise used PII stolen from those computer servers to file false tax returns through FSL, YTS, and MFR.

115. On or about February 17, 2017, PROPHT purchased from the Marketplace credentials for the compromised computer server of a CPA firm in Nevada. Thereafter, members of the Enterprise used PII stolen from that computer server to file false tax returns through SCA.

116. On or about March 4, 2017, RICH4EVER4430 purchased from the Marketplace credentials for the compromised computer server of a CPA firm in Tennessee. Thereafter, members of the Enterprise used PII stolen from that computer server to file false tax returns through SCA.

117.   Between on or about February 13, 2016, and on or about March 29, 2017, members of the Enterprise used a Device ID ending in A284AA99 to file hundreds of false tax returns through Edvert, FSL, and SCA.

118.   Between on or about January 24, 2017, and on or about March 8, 2017, members of the Enterprise used a Device ID ending in 2A7AFDBB to file hundreds of false tax returns through FSL, YTS, and MFR.

119.   On or about December 7, 2016, at the request of CO-CONSPIRATOR #2, Person-3 opened a bank account in the name of YTS. Thereafter, from in or about February 2017 through in or about March 2017, Person-3 received in this account significant sums of preparer fees that YTS had purportedly earned. CO-CONSPIRATOR #2 arranged for Person-3 to withdraw cash from the account and provide it to CO-CONSPIRATOR #2.

120.   On or about January 11, 2017, [redacted] registered LSJFR Multiservices LLC with the Florida Department of State Division of Corporations as a limited liability company.

121.   On or about January 17, 2017, [redacted] opened a bank account in the name of LSJFR Multiservices LLC. Thereafter, from in or about February 2017 until in or about April 2017, [redacted] received in this account significant sums of tax preparer fees that FSL had purportedly earned. In addition, in or about April 2017, [redacted] received in this account significant sums of tax preparer fees that SCA had purportedly earned.

29

122. On or about January 18, 2017, ▮▮▮▮▮ opened another bank account in the name of LSJFR Multiservices LLC. Thereafter, in or about February 2017 and in or about March 2017, ▮▮▮▮▮ received in this account significant sums of tax preparer fees that MFR had purportedly earned.

123. Between on or about February 18, 2017, and on or about March 2, 2017, CHERELUS withdrew more than $27,000 in cash from debit cards that held tax refund deposits as a result of false tax returns that FSL had filed in the names of identity theft victims.

124. Between on or about February 17, 2017, and on or about February 28, 2017, MICHEL withdrew more than $19,000 in cash from debit cards that held tax refund deposits as a result of false tax returns that FSL had filed in the names of identity theft victims.

125. On or about February 17, 2017, JACQUES withdrew more than $19,000 in cash from debit cards that held tax refund deposits as a result of false tax returns that FSL had filed in the names of identity theft victims.

### vi. Hijacked EFINs of Businesses-6 and -7 (2017)

126. On or about January 2, 2017, ▮▮▮▮▮ purchased from the Marketplace credentials for the compromised computer server of Business-6. Shortly thereafter, ▮▮▮▮▮ emailed the server credentials to JENKINS. Beginning on or about January 31, 2017, and continuing through on or about March 29, 2017, members of the Enterprise filed and caused to be filed approximately 276 tax returns

30

through the hijacked EFIN of Business-6, claiming more than $1.4 million in tax refunds.

127.   Beginning on or about February 8, 2017, and continuing through on or about March 28, 2017, members of the Enterprise—including RICH4EVER4430—filed and caused to be filed approximately 57 tax returns through the hijacked EFIN of Business-7, claiming approximately $294,000 in tax refunds.

128.   Members of the Enterprise—including JENKINS, ▭, and RICH4EVER4430—primarily used, and aided and abetted the use of, PII stolen in bulk from tax preparation and CPA firms to file false tax returns through the hijacked EFINs of Businesses-6 and -7.

129.   On or about January 5, 2017, and on or about February 2, 2017, ▭ ▭ purchased from the Marketplace credentials for the compromised computer servers of Business-8 and a CPA firm in Georgia. Shortly after each purchase, ▭ ▭ emailed the credentials to JENKINS. Thereafter, members of the Enterprise used PII stolen from those computer servers and Business-6 to file false tax returns through the hijacked EFIN of Business-6.

130.   On or about January 6, 2017, and on or about February 28, 2017, RICH4EVER4430 purchased from the Marketplace credentials for the compromised computer servers of Business-9 and a CPA firm in Pennsylvania. Thereafter, members of the Enterprise used PII stolen from those computer servers, and Business-3, to file false tax returns through the hijacked EFIN of Business-7.

131.   Members of the Enterprise used IP address 172.68.78.16 to file false tax returns through the hijacked EFINs of Businesses -3, -4, -5, -6, and -7.

### vii.   Self-Prepared Returns (2017)

132.   On or about February 22, 2017, ▊▊▊▊▊ purchased from the Marketplace credentials for the compromised computer server of a CPA firm in Oregon.

133.   Between on or about June 25, 2017, and on or about June 28, 2017, CHERELUS, MICHEL, and RICH4EVER4430 used PII stolen from that computer server to file and cause to be filed a series of false, self-prepared tax returns.  All of those returns were filed using a Device ID ending in A1C6D34.  In filing these self-prepared returns and claiming tax refunds, CHERELUS and RICH4EVER4430 directed the IRS to deposit tax refunds into bank accounts that JENKINS opened or controlled.

134.   Between on or about June 23, 2017, and on or about October 1, 2017, JENKINS used PII stolen from that compromised computer server to file, and aid and abet the filing of, a series of false, self-prepared tax returns.

### viii.   Hijacked EFIN of Business-8 (2018)

135.   On or about January 5, 2017, ▊▊▊▊▊ purchased from the Marketplace credentials for the compromised computer server of Business-8.  Shortly thereafter, ▊▊▊▊▊ emailed the credentials to JENKINS.

136.   Beginning on or about January 23, 2018, and continuing through on or about March 16, 2018, members of the Enterprise—including JENKINS, ▊▊▊▊

32

██████ and MICHEL—filed, caused to be filed, and aided and abetted the filing of, approximately 214 tax returns through the hijacked EFIN of Business-8, claiming more than $1.5 million in tax refunds.

137.   Members of the Enterprise including JENKINS, ██████████ and MICHEL—primarily used, and aided and abetted the use of, PII stolen in bulk from tax preparation and CPA firms to file false tax returns through the hijacked EFIN of Business-8.

138.   On or about February 20, 2018, MICHEL purchased from the Marketplace credentials for the compromised computer server of a CPA firm in North Carolina. Thereafter, members of the Enterprise used PII stolen from that computer server, Business-3, and Business-8 to file false tax returns through the hijacked EFIN of Business-8.

139.   PII that members of the Enterprise—including JENKINS, ██████ ██████ and MICHEL—used to file, and aid and abet the filing of, false tax returns through the hijacked EFIN of Business-8 included PII that members of the Enterprise had used to file false tax returns through the hijacked EFIN of Business-6 in 2017.

140.   In filing returns and claiming tax refunds through the hijacked EFIN of Business-8, members of the Enterprise directed the IRS to deposit certain tax refunds into bank accounts that JENKINS opened and controlled.

141.   On or about February 22, 2018, and on or about February 26, 2018, members of the Enterprise used PII stolen from two CPA and tax preparation firms to file false returns in the names of various individuals, including E.E., I.A., R.D., and

R.C., through the hijacked EFIN of Business-8. Between on or about February 13, 2018, and on or about February 26, 2018, MICHEL purchased from the Marketplace credentials of at least four compromised computer servers, which members of the Enterprise used to access and modify financial accounts in those individuals' names, in furtherance of the Enterprise's tax fraud.

### ix. CMS

142.   Beginning on or about January 31, 2018, and continuing through on or about February 26, 2018, members of the Enterprise—including JACQUES, POIX, and RICH4EVER4430—filed, caused to be filed, and aided and abetted the filing of, approximately 441 tax returns through CMS, claiming more than $2.2 million in tax refunds.

143.   Members of the Enterprise—including JACQUES, POIX, and RICH4EVER4430—primarily used PII stolen in bulk from tax preparation and CPA firms to file, and aid and abet the filing of, false tax returns through CMS.

144.   In or about January 2018, POIX invited Person-4 to start a tax business with POIX, so POIX and members of the Enterprise could use Person-4's identity, address, and phone number to facilitate the Enterprise's tax fraud.

145.   In or about January 2018, POIX directed Person-4 to have Person-4's fingerprints taken, to facilitate the establishment of CMS as a purported tax preparation firm.

146.   In or about January 2018 and in or about February 2018, members of the Enterprise—including JACQUES and POIX—obtained multiple EFINs for CMS.

34

147.   On or about January 25, 2018, JACQUES applied to obtain Drake software and refund transfer products for CMS's four EFINs.

148.   On or about January 25, 2018, POIX created, and aided and abetted the creation of, email address cmultiservices@yahoo.com, which the Enterprise used to facilitate tax fraud through CMS.

149.   On or about January 27, 2018, and on or about January 29, 2018, POIX made telephone calls to conduct business on CMS's behalf, to facilitate tax fraud through CMS.

150.   Between on or about January 30, 2018, and on or about February 6, 2018, POIX caused a refund transfer service to mail check stock to CMS at an address affiliated with Person-4.

151.   On or about January 11, 2018, RICH4EVER4430 purchased from the Marketplace credentials for the compromised computer server of a CPA firm in Minnesota.  Thereafter, members of the Enterprise used PII stolen from that computer server to file false tax returns through CMS.

152.   Between on or about April 1, 2017, and on or about February 16, 2018, members of the Enterprise used a Device ID ending in 4CDF9531 to file more than 50 tax returns through SCA and CMS.

153.   On or about January 23, 2018, at POIX's request, Person-4 opened a bank account in the name of CMS.  Person-4 allowed POIX to control the account. Thereafter, from in or about February 2018 through April 2018, POIX used the account to receive preparer fees that CMS had purportedly earned.  On at least one

35

occasion, POIX arranged for Person-4 to withdraw cash from the account and provide it to POIX.

### x. Hijacked EFIN of Business-9 (2018)

154.   On or about February 28, 2017, RICH4EVER4430 purchased from the Marketplace credentials for the compromised computer server of Business-9.

155.   Beginning on or about February 5, 2018, and continuing through on or about March 6, 2018, members of the Enterprise—including RICH4EVER4430— filed, caused to be filed, and aided and abetted the filing of, approximately 109 tax returns through the hijacked EFIN of Business-9, claiming approximately $550,000 in tax refunds.

156.   Members of the Enterprise—including RICH4EVER4430—primarily used PII stolen in bulk from tax preparation and CPA firms to file, and aid and abet the filing of, false tax returns through the hijacked EFINs of Business-9.

157.   On or about January 6, 2017, and on or about January 26, 2017, RICH4EVER4430 purchased from the Marketplace credentials for the compromised computer servers of tax preparation and CPA firms in Michigan and Pennsylvania. Thereafter, members of the Enterprise used PII stolen from those computer servers and Business-9 to file false tax returns through the hijacked EFIN of Business-9.

158.   PII that members of the Enterprise used to file false tax returns through the hijacked EFIN of Business-9 included PII that members of the Enterprise had used to file false tax returns through SCA.

### xi. Hijacked EFIN of Business-10 (2019)

159.   On or about February 21, 2017, ▮▮▮▮▮▮ purchased from the Marketplace credentials for the compromised computer server of Business-10.  On or about the same day, ▮▮▮▮▮▮ emailed the credentials to JENKINS.

160.   Beginning on or about January 29, 2019, and continuing through on or about March 19, 2019, members of the Enterprise—including JENKINS and ▮▮▮▮ ▮▮▮▮—filed, caused to be filed, and aided and abetted the filing of, approximately 146 tax returns through the hijacked EFIN of Business-10, claiming approximately $450,000 in tax refunds.

161.   On or about March 6, 2017, JENKINS sent an email with the EFIN and PTIN of Business-10's principal.  Members of the Enterprise used the EFIN and PTIN of Business-10's principal on all of the false returns that were filed through the hijacked EFIN of Business-10.

162.   Members of the Enterprise—including JENKINS and ▮▮▮▮▮▮— primarily used PII stolen in bulk from tax preparation and CPA firms to file, and aid and abet the filing of, false tax returns through the hijacked EFIN of Business-10.

163.   Between in or about February 2016 and in or about March 2019, members of the Enterprise used a Device ID ending in FB0C217C4 to file hundreds of tax returns through the hijacked EFINs of Business-2, Business-3, and Business-10.

164.   MICHEL, CHERELUS, JENKINS, and RICH4EVER4430, and other members of the Enterprise used IP address 99.61.44.90 to file false self-prepared tax

returns and false tax returns through the hijacked EFINs of Businesses-3, -4, -8, and -10.

165.    In filing returns and claiming tax refunds through the hijacked EFIN of Business-10, members of the Enterprise directed the IRS to deposit certain tax refunds into bank accounts that JENKINS opened and controlled.

All in violation of 18 U.S.C. § 1962(d).

## COUNT TWO
### (Conspiracy to Commit Wire Fraud)

166.    Paragraphs 1 through 47, 95 through 125, and 142 through 153 of Count One of the Indictment are re-alleged as if fully incorporated in this Count Two.

### A.    The Conspiracy

167.    Beginning in or around December 2016, and continuing through in or around April 2018, in the Middle District of Florida and elsewhere, the defendants,

ANDI JUNIOR JACQUES, and
MICHAEL JEAN POIX,

along with others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate and agree with each other, and with other persons, known and unknown to the Grand Jury, to commit wire fraud; that is, to knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire,

38

radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

### B.   Manner and Means of the Conspiracy

168.   The manner and means by which the conspirators sought to accomplish the objects and purposes of the conspiracy included, among other things, the following:

a.   It was part of the conspiracy that conspirators would and did establish and operate businesses that purported to be legitimate tax preparation firms.

b.   It was further part of the conspiracy that conspirators would and did illicitly obtain and conspire to illicitly obtain computer server credentials, through the Marketplace and through other means unknown to the Grand Jury.

c.   It was further part of the conspiracy that a conspirator would and did commit computer intrusions into legitimate tax preparation and CPA firms to steal PII and copies of past tax returns that those firms previously filed.

d.   It was further part of the conspiracy that conspirators would and did transfer, possess, and use the identities of other individuals—including PII obtained through computer server breaches—to file false and fraudulent tax returns.

e.   It was further part of the conspiracy that conspirators would and did use interstate wire communications to file with the IRS false federal tax returns, using stolen PII, through conspirator-established tax preparation firms.

f.   It was further part of the conspiracy that conspirators would and did use interstate wire communications to file with the IRS federal tax returns that

39

contained materially false and fraudulent pretenses and representations, including false representations that the named taxpayer had authorized or consented to the filing of the return.

g.      It was further part of the conspiracy that conspirators would and did prepare and file, and cause to be prepared and filed, materially false tax returns in the names of identity theft victims in order to fraudulently obtain tax refunds that conspirators were not entitled to receive.

h.      It was further part of the conspiracy that conspirators would and did open, and cause to be opened, bank accounts to collect preparer fees generated by the filing of false tax returns.

i.      It was further part of the conspiracy that conspirators would and did use refund transfers to print tax refund checks and direct deposits of fraudulently obtained tax refunds to debit cards and bank accounts that conspirators controlled.

j.      It was further part of the conspiracy that conspirators would and did misrepresent, conceal, hide and cause to be misrepresented, concealed and hidden, acts done in furtherance of the conspiracy.

All in violation of 18 U.S.C. § 1349.

## COUNT THREE
### (Conspiracy to Commit Wire Fraud)

169.   Paragraphs 1 through 47, and 135 through 141, of Count One of the Indictment are re-alleged as if fully incorporated in this Count Three.

40

## A.    The Conspiracy

170.    Beginning in or around January 2018, and continuing through in or around March 2018, in the Middle District of Florida and elsewhere, the defendants,

MONIKA SHAUNTEL JENKINS,

████   ███████████ , and

LOUIS NOEL MICHEL,

did knowingly and willfully combine, conspire, confederate and agree with other persons, known and unknown to the Grand Jury, to commit wire fraud; that is, to knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

## B.    Manner and Means of the Conspiracy

171.    The manner and means by which the conspirators sought to accomplish the objects and purposes of the conspiracy included, among other things, the following:

a.    It was part of the conspiracy that conspirators would and did illicitly obtain and conspire to illicitly obtain computer server credentials, through the Marketplace and through other means unknown to the Grand Jury.

b.      It was further part of the conspiracy that conspirators would and did commit computer intrusions into legitimate tax preparation and CPA firms to steal PII and copies of past tax returns that those firms previously filed.

c.      It was further part of the conspiracy that conspirators would and did transfer, possess, and use the identities of other individuals—including PII obtained through computer server breaches—to file false and fraudulent tax returns.

d.      It was further part of the conspiracy that conspirators would and did use the EFIN of a tax preparation firm to file false tax returns, and thereby fraudulently obtain tax refunds.

e.      It was further part of the conspiracy that conspirators would and did use interstate wire communications to file with the IRS federal tax returns that contained materially false and fraudulent pretenses and representations, including false representations that the named taxpayer had authorized or consented to the filing of the return.

f.      It was further part of the conspiracy that conspirators would and did prepare and file, and cause to be prepared and filed, materially false tax returns in the names of identity theft victims in order to fraudulently obtain tax refunds that conspirators were not entitled to receive.

g.      It was further part of the conspiracy that conspirators would and did misrepresent, conceal, hide and cause to be misrepresented, concealed and hidden, acts done in furtherance of the conspiracy.

All in violation of 18 U.S.C. § 1349.

42

## COUNT FOUR
### (Aggravated Identity Theft)

172.   On or about February 6, 2018, in the Middle District of Florida, and elsewhere, the defendants,

ANDI JUNIOR JACQUES, and
MICHAEL JEAN POIX,

did knowingly transfer, possess, and use, and aid and abet the knowing transfer, possession, and use of, without lawful authority, a means of identification of another person, specifically, K.M.O., during and in relation to a felony violation of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, as charged in Count Two of this Indictment, knowing that such means of identification belonged to an actual person.

In violation of 18 U.S.C. §§ 1028A(a)(1) and 2.

## COUNTS FIVE AND SIX
### (Aggravated Identity Theft)

173.   On or about the dates below, in the Middle District of Florida, and elsewhere, the defendants, as set forth in each count below, did knowingly transfer, possess, and use, and aid and abet the knowing transfer, possession, and use of, without lawful authority, a means of identification of another person, specifically, names and social security numbers, during and in relation to a felony violation of 18 U.S.C. § 1349, as charged in Count Three of this Indictment, knowing that such means of identification belonged to an actual person:

43

| Count | Defendant(s) | Victim | Approximate Date |
|-------|--------------|--------|------------------|
| Five | MONIKA SHAUNTEL JENKINS | G.D. | 2/4/2018 |
| Six | LOUIS NOEL MICHEL | L.F. | 2/26/2018 |

In violation of 18 U.S.C. §§ 1028A(a)(1) and 2.

## FORFEITURE

1.      The allegations contained in Counts One through Three are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 1963, and 28 U.S.C. § 2461(c).

2.      Upon conviction of a violation of 18 U.S.C. § 1962, the defendants shall forfeit to the United States, pursuant to 18 U.S.C. § 1963:

a.      Any interest acquired or maintained in violation of section 1962;

b.      Any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the defendants established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and

c.      Any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity in violation of section 1962.

3.      Upon conviction of a violation of 18 U.S.C. § 1349, the defendants shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

44

4.     If any of the property described above, as a result of any act or omission of the defendants:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to pursuant to 18 U.S.C. § 1963(m) and 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL,

_____
Foreperson

ROGER B. HANDBERG
United States Attorney

By: _____
Emily C. L. Chang
Assistant United States Attorney

By: _____
Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division

45

FORM OBD-34
APR 1991

No.

## UNITED STATES DISTRICT COURT
Middle District of Florida
Orlando Division

### THE UNITED STATES OF AMERICA

vs.

ANDI JUNIOR JACQUES
MONIKA SHAUNTEL JENKINS
███████ ████████
LOUIS NOEL MICHEL
JEFF JORDAN PROPHT-FRANCISQUE
DICKENSON ELAN
MICHAEL JEAN POIX
VLADIMYR CHERELUS
███████ ████████

### INDICTMENT

Violations:
18 U.S.C. § 1962(d)
18 U.S.C. § 1349
18 U.S.C. § 1028A(a)(1)

██████████████████████

_____ Foreperson

Filed in open court this __7__ day of September, 2022.

_____

_____ Clerk

Bail   $_____

GPO 863 525