AF Approval __NA_____                    Chief Approval ___CAB_____

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                                   CASE NO. 6:22-cr-148-PGB-LHP

MONIKA SHAUNTEL JENKINS

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, MONIKA SHAUNTEL JENKINS, and the attorney for the defendant, David J. Joffe, Esq., mutually agree as follows:

**A.    Particularized Terms**

    1.    Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and Five of the Indictment. Count One charges the defendant with RICO Conspiracy, in violation of 18 U.S.C. § 1962(d). Count Five charges the defendant with Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1).

    2.    Minimum and Maximum Penalties

Count One is punishable by a maximum term of imprisonment of 20 years; a fine of not more than $250,000; a term of supervised release of not more than 3 years, and a special assessment of $100 per felony count.

Defendant's Initials _____

Count Five is punishable by a mandatory term of imprisonment of 2 years, which must run consecutively to the term of imprisonment imposed for Count One; a fine of not more than $250,000; a term of supervised release of not more than 1 year; and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

First:  Two or more people agreed to try to accomplish an unlawful plan to participate in the affairs of an enterprise through a pattern of racketeering activity;

Second:  The unlawful plan affected interstate commerce;

Third:  The defendant knowingly and willfully joined in the conspiracy; and

Fourth:  When the defendant joined in the agreement, the defendant had the specific intent to participate in the enterprise's affairs, knowing that other members of the conspiracy would commit at least two other acts of racketeering and intending to help them as part of a pattern of racketeering activity.

Defendant's Initials _UML_                    2

The elements of Count Five are:

First:       The defendant knowingly transferred, possessed, or used
             another person's means of identification;

Second:      Without lawful authority;

Third:       During and in relation to a felony conspiracy to commit wire
             fraud, in violation of 18 U.S.C. § 1349; and

Fourth:      The defendant knew that the means of identification belonged to
             an actual person.

4.     Count Dismissed

At the time of sentencing, the remaining count against the defendant,

Count Three, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.     No Further Charges

If the Court accepts this plea agreement, the United States Attorney's

Office for the Middle District of Florida agrees not to charge defendant with

committing any other federal criminal offenses known to the United States

Attorney's Office at the time of the execution of this agreement, related to the

conduct giving rise to this agreement.

6.     Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full

restitution to the United States Treasury, identity theft victims, and Certified Public

Accounting or tax preparation firms that were unlawfully breached during the course

of the conspiracy charged in Count One.

Defendant's Initials _____            3

7.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit

Defendant's Initials _UMA_            4

referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 1963, whether in the possession or control of the United States, the defendant, or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will

Defendant's Initials _____     5

satisfy the notice requirement and will be final as to the defendant at the time it is
entered.  In the event the forfeiture is omitted from the judgment, the defendant
agrees that the forfeiture order may be incorporated into the written judgment at any
time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate
all property subject to forfeiture and to transfer custody of such property to the
United States before the defendant's sentencing.  To that end, the defendant agrees to
make a full and complete disclosure of all assets over which defendant exercises
control directly or indirectly, including all assets held by nominees, to execute any
documents requested by the United States to obtain from any other parties by lawful
means any records of assets owned by the defendant, and to consent to the release of
the defendant's tax returns for the previous five years.  The defendant further agrees
to be interviewed by the government, prior to and after sentencing, regarding such
assets and their connection to criminal conduct.  The defendant further agrees to be
polygraphed on the issue of assets if it is deemed necessary by the United States.  The
defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will
not protect from forfeiture assets disclosed by the defendant as part of the defendant's
cooperation.

The defendant agrees to take all steps necessary to assist the
government in obtaining clear title to the forfeitable assets before the defendant's
sentencing.  In addition to providing full and complete information about forfeitable
assets, these steps include, but are not limited to, the surrender of title, the signing of

Defendant's Initials _UMY_                6

a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

10.   Removal - Notification

The defendant has been advised and understands that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, the offense to which defendant is pleading guilty may be a removable offense. Removal and other

Defendant's Initials _____        7

immigration consequences are the subject of a separate proceeding, however, and the
defendant understands that no one, including the defendant's attorney or the district
court, can predict to a certainty the effect of the defendant's conviction on the
defendant's immigration status.  The defendant nevertheless affirms that the
defendant wants to plead guilty regardless of any immigration consequences that
may result from the defendant's guilty plea, even if the consequence is the
defendant's automatic removal from the United States following completion of the
defendant's sentence.

B.     **Standard Terms and Conditions**

1.     <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $200, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials _____      9

2. Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office

Defendant's Initials _____     10

within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.   Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement or defer a decision until it has had an opportunity to consider the presentence report prepared

Defendant's Initials _____        11

by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.   Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises

Defendant's Initials _____        12

its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then

the defendant is released from his waiver and may appeal the sentence as authorized

by 18 U.S.C. § 3742(a).

8. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the

United States Attorney for the Middle District of Florida and cannot bind other

federal, state, or local prosecuting authorities, although this office will bring

defendant's cooperation, if any, to the attention of other prosecuting officers or

others, if requested.

9. Filing of Agreement

This agreement shall be presented to the Court, in open court or in

camera, in whole or in part, upon a showing of good cause, and filed in this cause, at

the time of defendant's entry of a plea of guilty pursuant hereto.

10. Voluntariness

The defendant acknowledges that defendant is entering into this

agreement and is pleading guilty freely and voluntarily without reliance upon any

discussions between the attorney for the government and the defendant and

defendant's attorney and without promise of benefit of any kind (other than the

concessions contained herein), and without threats, force, intimidation, or coercion

of any kind. The defendant further acknowledges defendant's understanding of the

nature of the offense or offenses to which defendant is pleading guilty and the

elements thereof, including the penalties provided by law, and defendant's complete

Defendant's Initials: _UMK_                    13

satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials _____      14

12.   Entire Agreement

This plea agreement, ~~including Exhibit A,~~ *LB* *MJD* constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 30 day of August, 2023.

ROGER B. HANDBERG
United States Attorney

MONIKA SHAUNTEL JENKINS
Defendant

Dana E. Hill
Assistant United States Attorney

David J. Joffe, Esq.
Attorney for Defendant

Matthew J. Del Mastro
Special Assistant U.S. Attorney

Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division

Defendant's Initials _____      15

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:22-cr-148-PGB-LHP

MONIKA SHAUNTEL JENKINS

PERSONALIZATION OF ELEMENTS

As to Count One:

First:    Between on or about December 21, 2015, and March 19, 2019, did two or more people agree to try to accomplish an unlawful plan to participate in the affairs of an enterprise through a pattern of racketeering activity?

Second:   Did the unlawful plan affect interstate commerce?

Third:    Did you knowingly and willfully join in the conspiracy?

Fourth:   When you joined in the agreement, did you have the specific intent to participate in the enterprise's affairs, knowing that other members of the conspiracy would commit at least two other acts of racketeering and intending to help them as part of a pattern of racketeering activity?

As to Count Five:

First:    On or about February 4, 2018, did you knowingly transfer, possess, or use a means of identification belonging to G.D.?

Second:   Did you do so without lawful authority?

Third:    Did you do so during and in relation to a felony conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349?

Fourth:   Did you know that G.D. was an actual person?

Defendant's Initials _MJ_                16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:22-cr-148-PGB-LHP

MONIKA SHAUNTEL JENKINS

## FACTUAL BASIS

On or about January 12, 2017, the server of an accounting firm in Orlando,

Florida, identified in the Indictment as Business-11, was breached, and the

personally identifiable information (PII) of Business-11's clients was thereafter stolen

from the server and then used to file false tax refunds with the IRS. The FBI

initiated an investigation and identified a corrupt enterprise operating in the Middle

District of Florida and nationwide to obtain PII for the purpose of committing wire

fraud and mail fraud by submitting false tax refunds and retrieving the proceeds of

this offense. The FBI determined that, from at least December 21, 2015, through at

least March 19, 2019, Defendant, MONIKA SHAUNTEL JENKINS, as well as

coconspirators ALAIN JEAN-LOUIS, JEFF PROPHT-FRANCISQUE, LOUIS

NOEL MICHEL, VLADIMYR CHERELUS, LOUISAINT JOLTEUS, ANDI

JUNIOR JACQUES, DICKENSON ELAN, MICHAEL JEAN POIX, deceased

conspirator "Rich4ever4430," and others were part of that unlawful and corrupt

enterprise involving the submission of false and fraudulent tax refunds based on

stolen PII ("Enterprise"). The FBI's investigation revealed the following true facts

about this Enterprise and JENKINS's involvement in this Enterprise:

Defendant's Initials _____   17

### *JENKINS's Role*

In the course of this Enterprise, Defendant JENKINS was a resident of Florida who worked with her coconspirators to access a dark web market that sold illegally obtained credentials of compromised computer servers ("Marketplace"). JENKINS and her coconspirators used the Marketplace to purchase credentials of compromised computer servers that were used to steal taxpayer PII, which JENKINS and her coconspirators later used to file false and fraudulent tax returns. JENKINS also used the compromised computer servers to steal Electronic Filing Identification Numbers ("EFINs") – credentials used by tax preparers to file tax returns – so that she and her coconspirators could file fraudulent and false tax returns using the stolen PII ("Stolen EFIN-Filed Returns"). JENKINS's coconspirators also created new businesses purporting to be legitimate tax preparation firms and obtained real EFINs on behalf of these sham businesses that were then used to file fraudulent and false tax returns using the stolen PII ("Sham EFIN-Filed Returns"). JENKINS and her coconspirators also used stolen PII to file false and fraudulent tax returns as though they were submitted by taxpayers independently, not through a CPA or accounting firm ("Self-Prepared Returns"). JENKINS and her conspirators additionally created and modified financial accounts used to receive the tax refunds obtained from the IRS when the fraudulently submitted returns were accepted. Tax refunds fraudulently obtained as a result of the corrupt enterprise were deposited into bank accounts controlled by JENKINS or directed to refund transfer services through

Defendant's Initials ⟨signature⟩          18

which JENKINS and her coconspirators were able to obtain the fraud proceeds on debit cards and check stock.

JENKINS worked directly with JEAN-LOUIS, Rich4ever4430, and MICHEL in furtherance of this unlawful Enterprise. JENKINS worked indirectly and through other coconspirators in this same corrupt Enterprise. JENKINS utilized numerous email addresses in furtherance of the conspiracy, including frankpresto13@yahoo.com, msjenkins007@yahoo.com, shalouisdor@yahoo.com, terry.bouton@yahoo.com, and joypatridge42@yahoo.com, and she frequently exchanged emails with JEAN-LOUIS and other coconspirators to share PII, passwords, usernames, and other information used to commit financial fraud. Many of the false tax returns filed by the Enterprise were filed through a static internet protocol address ("IP-1") located at a physical address in Hollywood, Florida where JENKINS resided. Between May 2014 and 2018, the Enterprise used IP-1 to submit 900 false tax returns. During the course of the conspiracy, JENKINS controlled numerous bank accounts at Bank of America, Regions Bank, and Space Coast Credit Union, into to which tax refunds fraudulently obtained by the Enterprise were deposited.

Each false tax return filed in the course of this corrupt Enterprise was filed with the intent to defraud as part of a scheme to defraud by using false or fraudulent pretenses or representations about material facts and through the use of communications transmitted via wires in interstate commerce.

Defendant's Initials _____   19

### *Specific Acts by JENKINS in Furtherance of the Conspiracy*

On numerous occasions in February 2016, JENKINS emailed a coconspirator the PII of clients of Victim Firm-25, a CPA firm in Minnesota. Shortly thereafter, the Enterprise used that PII to file 115 false tax returns through the hijacked EFIN of Victim Firm-4.

On February 24, 2016, JENKINS emailed a coconspirator multiple photographs of a laptop screen showing an active intrusion into the server of Victim Firm-8, a CPA firm in Arizona. The photographs also included the tax return of A.S., a client of Victim Firm-8. Two days later, JENKINS created an email address using the name of the director of Victim Firm-8. That same day, the Enterprise began filing false tax returns using the director's tax preparer identification number (PTIN) and Victim Firm-8's EFIN. Within days, the Enterprise had filed a false return for A.S., using Victim Firm-8's EFIN.

On March 3, 2016, JENKINS emailed a coconspirator a series of client names and other PII stolen from Victim Firm-8, with the note: "DO THOSE SEND MORE AT 2am." The next day, the coconspirator replied to JENKINS with designated bank accounts for each name. Later that day, the Enterprise used Victim Firm-8's EFIN to file false tax returns, directing associated refunds to the designated bank accounts the coconspirator had emailed to JENKINS. On several other dates in March 2016, JENKINS emailed a coconspirator PII stolen from Victim Firm-12, which the Enterprise immediately used to file false tax returns through Victim Firm-

Defendant's Initials           20

8's EFIN. Fraudulently obtained refunds from those returns were directed to bank accounts the coconspirator had emailed to JENKINS.

In December 2016, JENKINS emailed Rich4ever4430 a screenshot of an IRS announcement about a "new wave of attacks that allow identity thieves to file fraudulent tax returns by remotely taking over practitioners' computers." Rich4ever4430 then forwarded the screenshot to CHERELUS.

On December 30, 2016, JEAN-LOUIS emailed JENKINS the server credentials for the compromised server of Victim Firm-9, a tax preparation firm in Texas. From January 23, 2017, through February 23, 2017, the Enterprise used Victim Firm-9's EFIN to file 158 fraudulent returns, claiming approximately $1 million in refunds. On January 6, 2017, JENKINS emailed a coconspirator the EFIN and PTIN for a principal accountant employed at the parent company of Victim Firm-9. The EFIN and PTIN for that principal accountant were used for the fraudulent returns filed through Victim Firm-9 and the PII for those false returns was stolen from the parent company of Victim Firm-9.

Starting in January 2017, JEAN-LOUIS used the "Shitgattostop" username on the Marketplace to purchase compromised server credentials of CPA firms. JEAN-LOUIS would then email those credentials to JENKINS, and then Enterprise would use them to file false tax returns using stolen PII. The coconspirators would often use the PII stolen from one firm with an EFIN stolen from a second firm in submitting the fraudulent returns.

Defendant's Initials _____      21

For example, on January 2, 2017, JEAN-LOUIS ("Shitgattostop") paid $1,120 on the Marketplace to purchase server credentials for Victim Firm-10, a CPA firm in Texas. Almost immediately after he bought them, JEAN-LOUIS emailed the credentials to JENKINS. From January 31, 2017, through March 29, 2017, the Enterprise used the hijacked EFIN from Victim-Firm-10 to file 277 fraudulent tax returns, claiming approximately $1.4 million in refunds.

For another example, on January 5, 2017, JEAN-LOUIS purchased credentials on the Marketplace to the compromised server of Victim Firm-5, a tax preparation firm from Texas. That same day, JEAN-LOUIS emailed those server credentials to JENKINS. Thereafter, from January 23, 2018, through March 16, 2018, members of the Enterprise used the EFIN for Victim Firm-5 to file 214 fraudulent tax returns, claiming approximately $1.58 million in refunds.

### *Aggravated Identity Theft Victim G.D.*

One of the individuals whose PII was stolen by JEAN-LOUIS's purchase of access to Victim Firm-5's server, and whose PII was used to file a false tax return through Victim Firm-5's EFIN, was G.D. G.D. was an actual person and JENKINS and others in the Enterprise knew that G.D. was an actual person at the time they transferred, possessed, and used G.D.'s PII in submitting false and fraudulent tax returns. The Enterprise filed a fraudulent tax return using G.D.'s PII on or about February 4, 2018. The associated refund was directed to a Space Coast Credit Union bank account that JENKINS controlled.

Defendant's Initials _____      22

### *Returns Filed with Hijacked EFIN from one Tax Firm and PII from Another*

On February 15, 2017, JEAN-LOUIS ("Shitgattostop") paid $1,333 on the Marketplace to purchase server credentials for Victim Firm-22, a CPA firm in Massachusetts. Later that day, JEAN-LOUIS emailed JENKINS a message titled "Massachusetts," which contained those server credentials. From February 19 through March 3, 2017, the Enterprise used the hijacked EFIN of Victim Firm-6, a CPA firm in Georgia to file twenty-two false returns using the PII of Victim Firm-22's clients.

On February 22, 2017, JEAN-LOUIS used the Marketplace to purchase compromised server credentials for a CPA firm in Oregon, Victim Firm-13. That same day, JEAN-LOUIS emailed JENKINS those credentials. From June 25, 2017, through June 28, 2017, the Enterprise used PII obtained through Victim Firm-13 to file false tax returns that were made to appear to be "self-prepared" by the taxpayer whose identifiers were stolen. These returns were filed through IP-1 at JENKINS's Hollywood, Florida residence.

On February 21, 2017, JEAN-LOUIS (Shitgattostop) paid $1,888 on the Marketplace to purchase the server credentials for Victim Firm-7, a CPA firm in Texas. Later that day, JEAN-LOUIS emailed those server credentials to JENKINS. On February 23, 2017, JENKINS created a draft email that listed the names of numerous clients of Victim Firm-6 whose PII the Enterprise had used in recent weeks to file false returns through Victim Firm-6's EFIN. Beneath the list, JENKINS wrote, "Million-dollar dreams and federal nightmares." From February 24, 2017,

Defendant's Initials _____       23

through March 8, 2017, the Enterprise used Victim Firm-6's EFIN to file 81 false tax returns using the PII of Victim Firm-7's clients. All of the accepted returns that the Enterprise submitted through the hijacked EFIN of Victim Firm-6 were created through IP-1 at JENKINS' Hollywood, Florida residence.

Notably, on March 6, 2017, JENKINS sent an email with Victim Firm-7's EFIN and office address, as well as the PTIN of Victim Firm-7's director. JENKINS also created an email address using the name of Victim Firm-7's director. On January 29, 2019, TaxSlayer, a tax preparation software company, emailed JENKINS at that email address to confirm her account activation. Starting that day and continuing through March 19, 2019, the Enterprise used Victim Firm-7's EFIN and PTIN to file 147 fraudulent returns with stolen PII, claiming approximately $452,150 in refunds. All of these returns were filed using TaxSlayer.

### *Victims and Losses Attributable to the Corrupt Enterprise*

In the course of this corrupt Enterprise, the participants filed 9,214 tax returns using fraudulently stolen PII and EFINs, claiming a total amount of refunds of more than $45 million. The IRS accepted many of these returns, paying an estimated total of more than $6 million in fraudulent refunds. The following reflects an estimation of the total amounts claimed on fraudulent tax returns using stolen EFINs, stolen PII, and EFINs associated with firms like FSL that were created by the members of the Enterprise to advance the fraudulent aims of the Enterprise.

Defendant's Initials _____   24

| Entity Whose EFIN was Used | Fraudulent Tax Returns Submitted | Amounts Fraudulently Claimed |
|---|---|---|
| Morton Fast Refund (MFR) | 828 | $4,532,354 |
| SC Accounting and Tax Services (SCA) | 303 | $1,558,327 |
| Chantol Multiservices (CMS) | 441 | $2,223,395 |
| Yvelene Tax Services (YTS) | 455 | $2,476,789 |
| FSL Multiservices (FSL) | 664 | $3,099,291 |
| Edvert Tax Prep (EDV) | 1046 | $5,140,673 |
| AAJR Multiservices (AAJR) | 1853 | $6,767,992 |
| Deedee Multiservices (DMS) | 605 | $1,728,728 |
| RP Tax | 67 | $277,827 |
| Victim Firm-1 | 331 | $1,464,738 |
| Victim Firm-2 | 57 | $294,887 |
| Victim Firm-3 | 109 | $551,234 |
| Victim Firm-4 | 175 | $1,145,257 |
| Victim Firm-5 | 214 | $1,577,384 |
| Victim Firm-6 | 219 | $1,143,764 |
| Victim Firm-7 | 147 | $452,150 |
| Victim Firm-8 | 296 | $2,099,859 |
| Victim Firm-9 | 158 | $1,035,240 |
| Victim Firm-10 | 277 | $1,454,602 |
| Self-prepared | 969 | $6,409,684 |
| **TOTALS** | **9,214** | **$45,434,175** |

Based on the evidence and investigation, the Government and the Defendant agree that the readily provable estimation of losses attributable to the Defendant's participation includes the tax refunds fraudulently submitted through FSL, Victim Firm-1, Victim Firm-2, Victim Firm-4, Victim Firm-5, Victim Firm-6, Victim Firm-7, Victim Firm-8, Victim Firm-9, Victim Firm-10, and the self-prepared returns.

In all of this conduct, two or more people agreed to try to accomplish an unlawful plan to participate in the affairs of an enterprise through a pattern of racketeering activity, this unlawful plan affected interstate commerce, JENKINS

Defendant's Initials _____   25

knowingly and willfully joined in the conspiracy, and, when JENKINS joined in the agreement, JENKINS had the specific intent either to personally participate in committing at least two other acts of racketeering, or else to participate in the enterprise's affairs, knowing that other members of the conspiracy would commit at least two other acts of racketeering and intending to help them as part of a pattern of racketeering activity.

In addition, on or about February 4, 2018, JENKINS knowingly transferred, possessed, or used, or aided and abetted the transfer, possession, or use of, without lawful authority, the name and social security number of G.D., during and in relation to conspiracy to commit wire fraud, knowing that such means of identification belonged to an actual person.

Defendant's Initials _____     26